UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Joseph Shumaker

    v.

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

Civil No. 17-cv-741-LM
Opinion No. 2019 DNH 130

O R D E R

Joseph Shumaker brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR Mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims and breach of warranty claims. Shumaker's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR Mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. His case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case.

Defendants Atrium and Maquet move to dismiss Shumaker's claims on the grounds that they are barred by the statute of limitations and that he has not stated an actionable claim for relief under Kansas law, which they contend applies to Shumaker's claims.[1] Shumaker objects, arguing that the discovery rule and other equitable tolling doctrines apply to make his claims

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

timely. He also challenges defendants' choice of law analysis and argues that his claims are actionable.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Although Shumaker is now a resident of Alabama, at the time of the surgical procedures at issue in this case, he lived in Kansas. He had a surgical procedure to repair abdominal wall hernias in May 2010 at a hospital in Shawnee Mission, Kansas. His physician implanted a piece of C-QUR V Patch mesh, which defendants manufactured and sold to his physician, for the repair.

In June 2014, Shumaker had another surgical procedure because his hernia had reoccurred. During that procedure, his physician found that the mesh patch had come off the abdominal wall, formed into a ball, and was covered with pus. That procedure was done in Kansas City, Missouri.

Atrium, which designed, marketed, and sold the C-QUR V Patch mesh that was implanted into Shumaker, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Shumaker alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Shumaker alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Shumaker further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. He alleges claims of negligence (Count I); product liability under the Kansas Product Liability Act (Count II); strict liability – design defect (Count III); strict liability – manufacturing defect (Count IV); strict liability – failure to warn (Count V); breach of express warranty (Count VI); breach of implied warranties of merchantability and fitness of purpose (Count VII); and punitive damages (Count VIII).

## DISCUSSION

Defendants Atrium and Maquet move to dismiss all of Shumaker's claims as time-barred under the applicable New Hampshire statutes of limitations. They also argue that Kansas law governs the liability portions of Shumaker's claims and that: (1) Counts I and III-VII fail to state claims for relief; (2) Count II, alleging joint and several liability, is not viable; and (3) Count

VIII for punitive damages is not an actionable claim. Shumaker objects, arguing that his claims are not time-barred, that New Hampshire law governs the liability portions of his claims, and that Count VIII is seeking a special category of damages and should proceed as a separate count.

I. Statute of Limitations

The parties agree that New Hampshire's statutes of limitations, as procedural rules of the forum state, apply in this case. See [TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *3 (D.N.H. Sept. 29, 2015)](discussing circumstances under which it is appropriate for this court sitting in diversity to apply New Hampshire's statute of limitations). They further agree that Shumaker's product liability claims, Counts I through V, are governed by RSA 508:4, I, and the breach of warranty claims, Counts VI and VII, are governed by RSA 382-A:2-725.

    A. Product Liability Claims

Under New Hampshire law, "[e]xcept as otherwise provided by law, all personal actions, . . . may be brought only within 3 years of the act or omission complained of." RSA 508:4, I. An exception to that time limit exists

> when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. If the defendant meets the initial burden of showing that the action was not brought within three years of the underlying events, to avoid dismissal, the plaintiff must show

that the discovery rule or another tolling doctrine, such as the fraudulent concealment rule, applies. Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010).

"[T]he fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence." Bricker v. Putnam, 128 N.H. 162, 165 (1986). The equitable purpose of the fraudulent concealment rule in tolling the limitations period is to prevent the wrongdoer from receiving and keeping the benefit of its fraudulent conduct. Lakeman v. LaFrance, 102 N.H. 300, 303 (1959). Similarly, the doctrine of equitable tolling delays the limitations deadline when the plaintiff "was prevented in some extraordinary way from exercising his or her rights." Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 623 (2005).

Defendants argue that Shumaker's product liability claims are time-barred because he had the mesh implanted in 2010 and had it removed in June 2014 but did not bring suit until December 21, 2017, more than three years later. In response, Shumaker invokes the protection of the discovery rule and the doctrines of fraudulent concealment and equitable tolling.

Shumaker alleges that defendants concealed the defective design of the C-QUR V Patch that was implanted to repair his hernias and that they misled physicians about the mesh product's likelihood of failure. See, e.g., doc. no. 63 at ¶¶ 50, 152, 164, 183. He contends that because of those actions he did not know and could not have known before at least December 22, 2014, that the C-QUR V Patch's design or manufacturing defects caused his injuries.

"The district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations when the pleader's allegations leave no doubt that an asserted claim is time-barred." DeGrandis v. Children's Hosp. Bos., 806 F.3d 13, 17 (1st Cir. 2015)

5

(internal quotation marks omitted); see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004). Taking Shumaker's allegations in the light most favorable to him and resolving reasonable inferences in his favor, Shumaker's allegations are sufficient to preclude dismissal of his product liability claims as time-barred at this stage of the litigation. If, as the case develops through discovery, defendants find facts that support the statute-of-limitations defense, they may raise that defense at an appropriate time, such as in a motion for summary judgment.

    B. <u>Breach of Warranty Claims</u>

Shumaker alleges both breach of express warranty (Count VI) and breach of implied warranties (Count VII) claims. The parties agree that RSA 382-A:2-725 provides the applicable statute of limitations for Shumaker's breach of warranty claims.

RSA 382-A:2-725(1) states that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id.

The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). In addition, while equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley

v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc., 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that the breach of warranty claims accrued when the mesh product was implanted, May 17, 2010, which is more than four years before Shumaker brought suit in December 2017. Shumaker contends that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. He further contends that he could not have been aware of the defects in the mesh until June 2014 at the earliest. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to implied warranty claims.

As stated above, the discovery rule for future performance does not apply to implied breach of warranty claims. Nor does equitable tolling or fraudulent concealment. Therefore, Shumaker's claim for breach of implied warranties, Count VII, accrued on May 17, 2010, the date of Shumaker's first surgery. Because Shumaker brought this suit more than four years later, Count VII is dismissed as untimely.

The discovery rule for future performance applies to Shumaker's breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. Kelleher, 152 N.H. at 828. At this stage of the litigation, the court is limited to the allegations in Shumaker's complaint and does not have defendants' actual advertising or marketing materials. Shumaker alleges that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be surgically implanted into patients. As such, the court may make the reasonable inference that defendants' advertising and marketing materials expressly warranted the future performance of the mesh product after

7

implant. Therefore, Shumaker's allegations are sufficient to preclude dismissal of the express warranty claim, Count VI, as time-barred at this stage of the litigation. Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

II. Choice of Law

As a preliminary matter, Shumaker includes a section in his objection that is titled "Ripeness of Choice of Law Determination." Doc. no. 69-1 at 3. He notes that "[t]here is no rule allowing nor prohibiting choice of law determinations at the motion to dismiss stage." Id. Shumaker goes on to discuss cases that address whether the record was sufficiently developed to allow a choice of law determination at an early stage of the litigation. Shumaker, however, does not identify any missing information that would be necessary for a choice of law determination here or actually contend that this case is not sufficiently developed at this stage. Therefore, Shumaker has not shown that the choice of law determination is premature, and the court employs the analysis.

The parties agree that New Hampshire choice of law principles govern the choice of law question in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when

8

application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

The parties agree that New Hampshire and Kansas are interested states.[2] They contend that the product liability laws in New Hampshire and Kansas conflict because Kansas has consolidated all product liability claims, regardless of the theory of relief, under the Kansas Product Liability Act. See Flaherty v. CNH Indus. Am., LLC, --- P.3d ---, 2019 WL 2694481, at *24 (Kan. Ct. App. June 28, 2019). In contrast, product liability in New Hampshire is governed by common law, which allows claims under a variety of theories of strict liability, breach of warranty, and negligence. See Short v. Amerada Hess Corp., No. 16-cv-204-JL, 2019 WL 1430106, at *15 (D.N.H. Mar. 29, 2019).

Despite this difference, defendants, who bear the burden to show an <u>actual</u> conflict, have not shown (or attempted to show) that the application of Kansas law would change the outcome of Shumaker's claims. Because defendants have not carried their burden, the court will apply New Hampshire law to the liability portion of Shumaker's claims. See Aftokinito, 2010 WL 3168295, at *3.

---

[2] Neither Shumaker nor defendants suggest that Alabama is an interested state based on Shumaker's current residence there.

Even if defendants could show that the outcome of Shumaker's claims would be different under New Hampshire law than it would under Kansas law, New Hampshire law would still apply. New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *2 (D.N.H. Oct. 7, 2011).

The first three factors have little or no relevance in this case. The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Thus, the first factor has no weight here.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state "which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). As the parties agree that both Kansas, where Shumaker had his 2010 surgery, and New Hampshire, where Atrium designed, marketed, and sold the C-QUR V Patch mesh, have a substantial connection to the facts of the case, the second factor has little relevance. With respect to the third factor—simplification of the judicial task—the court is of course more

10

accustomed to New Hampshire product liability law but could also apply Kansas law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors bears on the choice of law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products. See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974) (noting that Massachusetts had little interest in shielding a foreign corporation from liability under statute limiting wrongful death recovery); Heath v. Sears, Roebuck & Co., 123 N.H. 512, 521 (1983). Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the

modern stream." TIG Ins., 2015 WL 5714686, at *6 (internal quotation marks and citation omitted). "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted).

The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412. It is not uncommon for a court to decide "after conscientious consideration" that the forum's laws are "wiser, sounder, and better calculated to serve the total ends of justice under law in the controversy before it than are the competing rules of the other state involved in the case." Benoit v. Test Sys., Inc., 142 N.H. 47, 53 (1997) (internal quotation marks omitted).

The Kansas Product Liability Act is more than thirty-five years old and, as set out in Shumaker's objection, appears to restrict a plaintiff's opportunity to redress injuries caused by defective products. See, e.g., McCroy ex rel. McCroy v. Coastal Mart, Inc., 207 F. Supp. 2d 1265, 1273–74 (D. Kan. 2002) (holding that "under Kansas law, a product must be both defective and unreasonably dangerous to trigger liability on the part of a retailer or manufacturer"). By contrast, New Hampshire common law continues to evolve in response to "the socio-economic facts of life" through the development of case law and provides plaintiffs a fair opportunity to seek redress for their injuries in product liability cases. See Connelly v. Hyundai Motor Co., 351 F.3d 535, 539 (1st Cir. 2003) ("The New Hampshire Supreme Court has consistently declined to adopt the rule urged by Hyundai—that a trial court may not instruct a jury on both strict liability and negligence counts in a product liability action."); State v. Exxon Mobil Corp., 168 N.H. 211, 247-50 (2015) (discussing the development of New Hampshire's product liability law and the efforts to avoid the "practically impossible burden" that many

plaintiffs face in such cases).  For these reasons, New Hampshire provides the sounder rule of law.

In sum, the first three factors have little relevance to the court's choice of law analysis, and the fourth factor weighs slightly in favor of applying New Hampshire law.  The fifth factor, however, weighs heavily in favor of applying New Hampshire law.  Therefore, on liability questions, the court will apply the law of New Hampshire.

III.  Merits of the Claims

Defendants move to dismiss Shumaker's claims on the ground that they are not cognizable under Kansas law.  Because New Hampshire law, not Kansas law, governs the claims, defendants' arguments are not relevant.  Count II, however, which alleges a claim under the Kansas Product Liability Act, is not cognizable under New Hampshire law for the reasons stated supra at 8-12.  Therefore, the court grants defendants' motion to dismiss as to Count II.

In addition, defendants are correct that a claim for punitive damages, as alleged in Count VIII, does not set out a "claim for relief" within the meaning of Federal Rule of Civil Procedure 8(a)(2).  Instead, it is a request for a remedy and should not be labeled a separate "count." D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., No. 17-cv-747-LM, 2018 WL 6519070, at *6 (D.N.H. Dec. 11, 2018).  Although Shumaker's request for punitive damages is not a separate count, the request remains in the case at this stage of the proceedings.  Id. (citing cases).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 65) is granted as to Count II (violation of the Kansas Product Liability Act) and Count VII (breach of implied warranties) and is otherwise denied. Count VIII describes a claim for a particular type of relief rather than a separate stand-alone legal claim. The claim for relief (punitive damages) remains in the case, but the label (Count VIII) is dismissed.

    SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

August 13, 2019

cc: Counsel of Record